DUNIWAY, Circuit Judge:
This is one of several cases arising from the reorganization in bankruptcy, under Chapter X of the Bankruptcy Act, of Southwest Restaurant Systems, Inc., several of which we - decide today. The reorganization was completed by a sale of the stock of the corporation, in October, 1975. In March, 1976, Southwest filed an action in Arizona state court against appellants Grace and Stockton & Hing, attorneys, charging legal malpractice in representing and advising Southwest, and demanding large damages.
Appellants moved for summary judgment in that action, on the ground that the claims for relief there asserted did not belong to Southwest, but did belong to its former bankruptcy trustee. Thereupon Southwest went back to the bankruptcy court for an order clarifying the ownership of the claims. The bankruptcy court entered an order holding (1) that the claims remained the property of Southwest, and (2) that before October 14,1975, the reorganization trustee had abandoned the claims, that they reverted to Southwest, and that the trustee had no interest in them. The district court affirmed. Se do we.
On October 14, 1975, the bankruptcy judge entered a final order confirming the trustee’s plan of reorganization. That order confirms the trustee’s plan of reorganization and carries it out in eight numbered paragraphs, as follows:
1. Cancels all stock of Southwest.
2. Orders 100 shares issued to the buyer, one McElhanon, to be delivered to him, free and clear, on completion of the sale.
3. Confirms sale of these shares to McElhanon for $1,100,000.00, payable
(a) By assuming a secured debt of $400,-000 and the trustee paying certain interest accrued on it, and
(b) Paying $700,000 through an escrow, and
(c) Authorizing the trustee, at close of escrow, to pay a certain debt to First National Bank of Arizona.
(d) Providing for prorations.
(e) Providing for delivery of possession on close of escrow.
4. Provides that all claims and accounts payable, etc., and all claims arising from stock ownership (except those mentioned in paragraph 3(a) and (c) and a loan agree *1250 ment between McElhanon and the Bank) shall attach “to the proceeds of said escrow and other assets in the hands of the trustee.” Paragraph 4 then continues:
Upon completion of the sale of the aforesaid stock, as set forth in this Order, Southwest Restaurant Systems, Inc., and all property and assets of Southwest Restaurant Systems, Inc., including particularly but without limitation all property and assets comprising or in any way connected with the business known as Pinnacle Peak Patio, shall be released and discharged from any and all liability, claims, liens or encumbrances whatsoever, save and except only the aforesaid mortgage due B. D. Ranches, Inc., and the aforesaid lien, security interest and assignment that will be created in favor of First National Bank of Arizona, (emphasis added.)
5. Provides that after payment of all creditor’s claims, the remaining sum from the purchase price will be distributed to the former stockholders, less any sums they owe the corporation. [The corporation has large judgments against Greer and Harris, two of the three former stockholders.]
6. This paragraph reads:
Subject to the provisions of paragraph 3(c) of this Order requiring immediate allowance and payment of the claims of First National Bank of Arizona . . , the Trustee and his attorney will continue, after the above described sale, to litigate all claims which are objectionable and all questions of priority and all causes of action they deem appropriate.
7. This paragraph reads:
There is hereby set over and assigned to the Trustee, on the date of the closing of the sale of the stock, all then existing trade accounts receivable, certificates of deposit, bank accounts and cash on hand, officers accounts receivable and suits against officers.
8. Appoints the trustee disbursing agent.
When the foregoing provisions are read together, as they must be, it is clear to us from the order itself that the intangible assets which the trustee retained were those, and those only, that are listed in paragraph 7. These include suits against officers, but they do not include the claims that are involved in this case. Those passed to Southwest under the provisions of paragraph 4 quoted above. Paragraph 4 covers “all property and assets of Southwest,” and the only exception to that broad language is stated in paragraph 7.
It is true that, as appellants point out, the June 2,1975 Trustee’s Plan and the October 6 Trustee’s Amended Plan each contain the following language in a paragraph entitled “Provisions for Stockholders Who Are Affected By and Do Not Accept the Plan by the Requisite Majority”:
The trustee and his attorney will pursue any cause of action that exists in favor of the debtor against the officers, directors or any third party for the benefit of the estate, which causes of action are hereby retained by the trustee for the benefit of the estate.
This is broader than paragraph 7 of the order of October 14, 1975, quoted above.
However, the order, not the plan, is the operative document. We know of no rule that, in confirming a plan and ordering it into effect, a court cannot modify any of its provisions, and common sense tells us that that cannot be the law. We presume, absent evidence to the contrary, that the modification contained in paragraph 7 of the order was intentional. Appellants have not demonstrated that it was unintentional, or a mistake. Thus, we construe the order as setting over the claims here involved to Southwest.
We need not reach the question of abandonment. Nor need we consider whether Rule 60, F.R.Civ.P., applies.[1] The bankruptcy judge’s construction of the October 14 order coincides with our own. If it was error to embody that construction in a “nunc pro tunc” order, that error is harmless.
Affirmed.

. See 1 Collier on Bankruptcy, 14th Ed., ¶ 2.49, pages 287-295.